## SEYMORE v. RICE.

The motion for a new trial, besides containing the usual grounds that the verdict is contrary to law and the evidence, embracing the special ground of newly discovered evidence, the evidence adduced at the trial being conflicting, and the affidavits submitted in support of this latter ground of the motion not being sent up in the record brought to this court, it does not affirmatively appear that there was any abuse of discretion by the trial judge in granting a first new trial.                    *Judgment affirmed.*
May 27, 1892.

New trial. Evidence. Before Judge McWHORTER. Hart superior court. September term, 1891.

The action was by Seymore against Rice to recover a portion of the price paid by the plaintiff to the defendant for land, because of an alleged shortage in the amount of it. The issue was as to whether the contract between the parties was for the sale of the land at a certain price per acre, or as a whole for a certain price provided the tract contained a certain number of acres, or whether the contract was for the sale of the land as a whole at an agreed price; it being alleged by the plaintiff and denied by the defendant that the former bought in reliance upon the representations of the latter that the tract contained one hundred and seventy acres. The suit was commenced on December 30, 1890. The ver-

dict was in favor of the plaintiff, and a motion by the defendant on the general grounds for a new trial was sustained, to which ruling the plaintiff excepted. The record shows that there was a ground for new trial because of newly discovered evidence ; but what that evidence was does not appear.

It appears that the sale was made on August 16, 1884, when the plaintiff took from the defendant a bond for title conditioned to convey the land as containing "one hundred and seventy acres, be the same more or less, and bounded by Thomas Butler, W. Ashworth, A. C. Daniel and J. S. Denny, and on the waters of South Fork of Mill Shoal creek." On September 30, 1887, the plaintiff received from the defendant a deed in consideration of $1,200, reciting the tract to contain " one hundred and seventy acres more or less on Mill Shoal creek, bounded on west by lands of A. C. Daniel, on north by Wash. Ashworth and J. S. Denny on south and east." A plat of Cleveland, the county surveyor, dated December 18, 1888, showed the tract to contain one hundred and nineteen acres ; and Cleveland testified that this plat covered all the land described in the deed.

The plaintiff testified: The deed I hold covers the land in question and the land sold me by defendant. The land is short fifty-one acres. I went over to see defendant about buying the land, and he sold it to me at seven and one seventeenth dollars per acre. He told me there were one hundred and seventy acres in the tract, and pointed out to me where the land went, and pointed out a body of woods of about forty acres which he said was in the land sold me. I told him, if there was 170 acres in the tract, I would give him $1,200.00 for it. He said he would not take it, and afterwards said he would come over to my house the next morning and let me know if he concluded to take my offer. He came over the next morning and we traded and fixed up the papers. Defend-

ant told me before I bought, there were 170 acres in the tract. I believed what he said and relied on his statements. I would not have bought at that price if I had known the land was short. I arrived at the price that I paid by counting the number of acres. I did not consider that land worth more than seven dollars per acre, but agreed to give a fraction over to make it even money. I thought the tract contained 170 acres until I got Cleveland to survey it in 1888. I then found it was short fifty-one acres, and did not contain the woodland pointed out to me by defendant, and that the line on that side did not run where he said it ran. At the time I bought I did not know where the line ran on that side of the place where the woodland was. After the survey made by Cleveland, the defendant came over and we measured around the land, and when we got to the cherry corner he went over in the body of woods on Mr. Daniel's land to continue the ———— in that direction, and some of us called him back, and we then took down the line surveyed by Cleveland. The way he wanted to go would have taken in the boundary of woodland he showed me before I bought, and would have covered about forty or fifty acres of land that did not belong to the tract. After we passed the woods and struck the field on the other side, defendant admitted that he had been mistaken as to where the line was. The defendant on two or three occasions talked with me about buying his land, and at all times represented the land to contain 170 acres, and I bought thinking there was one hundred and seventy acres in the tract. I lived near the land on an adjoining tract for six years next before I purchased from defendant, and I knew most of the lines. I have hunted on the land often, and I thought there was one hundred and seventy acres in the tract, and never knew the contrary until the survey of Cleveland was made. I got Cleveland to survey off forty acres to sell to my father, and it

cut such a big hole in the tract that I concluded to have him survey the whole tract, and then found that I had fifty-one acres short for which I had paid defendant seven and one seventeenth dollars per acre. This is the bond for title I took when I purchased. I never told Jerry Hall soon after I purchased, nor at any time, that I had purchased the land by the tract, nor did I say to him that Mell Seymore had offered me $1,500 for the land, nor anything like this. I finished paying for the land on or before the day of the date of the deed from Rice to me.

Denny testified: I was present with plaintiff and defendant after the survey made by R. W. Cleveland, when they were making a survey or running and measuring the lines around the land sold plaintiff by defendant, and when we got to the cherry tree corner, defendant went on by the cherry corner over on Mr. Daniel's land until I called to him and stated that Cleveland stopped here at the cherry corner; and went down this line (pointing the way Cleveland ran the line), and then defendant came back and followed the line Cleveland ran. If we had run the way defendant wanted to run, it would have taken in about forty acres more of woodland than belonged to the tract. After we got past the woods into the field, defendant acknowledged that he was mistaken as to where the line was. I am son-in-law of plaintiff.

The defendant testified: J. J. Seymore came over to see me about buying my land. I told him I would sell it to him for twelve hundred and fifty dollars. He offered me $1,200 for it. I refused to take it, but told him if I concluded to sell at his offer I would go over to his house the next morning and let him know. I went over the next morning and told him I would take his offer of $1,200, and we fixed up the papers. This was the whole trade. I never sold him by the acre, but by the tract.

He never mentioned acres nor a price per acre. I sold by the boundary and for twelve hundred dollars. I never showed him the lines nor pointed them out to him before the sale. He lived on an adjoining tract and knew my land well, knew the lines nearly as well as I did; lived there five or six years before he bought. When I found out that Cleveland had surveyed the land and that he had run it out short, I went over, and Seymore and I measured the land. I thought they had made a mistake. I never passed by the cherry corner in running the line; I only made a slight mistake at a little offset in the line before we got to the cherry corner, and I soon found out that I was off the line and got over on the correct line. I knew where the cherry corner was and made no mistake here; I never went by it and over on lands of Daniel.

Jerry Hall testified: I saw plaintiff soon after he had bought the land from defendant, and he told me that he had bought the land at $1,200; that he had bought by the tract and agreed to pay so much for it. He told me that Mell Seymore had offered him $1,500 for the land. I am son-in-law to defendant.

McCURRY & PROFFITT, for plaintiff.
JOSEPH N. WORLEY, for defendant.